**ATTACHMENT C**
**AFFIDAVIT**

3: 18 mj 30034

Your affiant, Kimberly A. Suhi, being duly sworn, deposes and states the following:

1. Your affiant is a special agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") assigned to the Tampa Field Division, Pensacola Field Office, and has been employed as such for approximately 15 years. Your affiant is charged with the investigation and enforcement of violations of federal criminal laws pertaining to firearms and controlled substances. Your affiant attended the Criminal Investigator Training Program at the Federal Law Enforcement Training Center ("FLETC"), in Glynco, Georgia, for approximately 10 weeks in 2003, where I received training and instruction as a special agent, including firearms training, the execution of search and arrest warrants, investigative techniques, and legal instruction which covered Fourth Amendment searches and seizures. Subsequently, for approximately 14 weeks in 2003, your affiant attended specialized training known as New Professional Training through ATF at FLETC, where I received instruction in firearms technology and identification, firearms trafficking, explosives, and arson.

2. Your affiant has participated in investigations of individuals who have violated state and federal laws, particularly those laws found in Titles 18 and 21 of the United States Code. Further, your affiant has participated in the execution of search warrants wherein firearms, ammunition, large amounts of narcotics, currency, drug paraphernalia, and records of firearms and narcotics trafficking have been recovered. As a part of your affiant's duties, your affiant has conducted and participated in the arrests of firearms and narcotics law violators. In addition, your affiant has testified on several occasions in grand jury proceedings, where my testimony has contributed to the indictment of numerous individuals. Additionally, your affiant has had conversations with other experienced agents regarding firearms and narcotics trafficking

activities and the many different enforcement methods used to combat firearms and narcotics trafficking.

3.      This affidavit is made in support of an application for search warrants to search two cellular telephones, more specifically described as:

**Attachment A-1** - ZTE, Model Z798BL, IMEI: 866665030187267, S/N 32F4762715D8, containing SIM Card: SM128PSIMT5RM 8901 260 645 185 696 851; and

**Attachment A-2** - LG, Model LFMP260, IMEI: 352130-09-930925-3, S/N 711CYBD930925, containing SIM Card: 8901260331 929739386F 085629.

That is, this affidavit is made in support of authorization to search these cellular telephones for evidence of the following violations: possession of a firearm and ammunition by a convicted felon, in violation of Title 18, United States Code, Section 922(g); and possession of a controlled substance, in violation of Title 21, United States Code, Section 841, which evidence is more particularly described in Attachment B.  Pursuant to the warrants sought, your affiant seeks authority to search the cellular telephones by activating and retrieving the telephone numbers assigned to each of the cellular telephones, and retrieving all information and data stored on the cellular telephones. The information contained in this affidavit was obtained during the course of your affiant's investigation of the conduct of Marcus Steven Finklea and others, and/or is based upon information provided to your affiant by other law enforcement officers.  Since this affidavit is for the limited purpose of establishing probable cause, your affiant has not included every fact known about this investigation, but rather, only those facts your affiant believes are necessary to establish probable cause for the requested search warrants.

2

**PROBABLE CAUSE**

4.      On or about January 25, 2018, Pensacola Police Department ("PPD") Officer Jose Matos observed a black Chevrolet truck traveling southbound on North Davis Highway in Pensacola, Florida.   North Davis Highway is a one-way street heading northbound only. Thereafter, Officer Matos initiated a traffic stop on the vehicle at the intersection of North Davis Highway and East Gadsden Street.  As Officer Matos was approaching the passenger side of the vehicle, PPD dispatch asked Officer Matos to repeat the license plate on the vehicle a second time.  After Officer Matos relayed the license plate to the dispatcher, the vehicle left at a high rate of speed.  Officer Matos then pursued the Chevrolet truck while using his patrol vehicle's lights and sirens.  The Chevrolet truck eventually came to a stop after running off the road at the intersection of North Hayne Street and East Wright Street.   At that point, the driver and passenger doors of the Chevrolet truck opened, and Officer Matos gave verbal commands to the driver and the passenger to remain inside the vehicle.  However, the driver, later identified as Marcus Steven Finklea, exited the vehicle through the passenger door, jumped over a fence, and fled the area on foot.

5.      Officer Matos then made contact with the passenger of the truck Kyra Patroni. Patroni spontaneously stated her boyfriend "dropped the gun and ran." Patroni was detained, and placed inside Officer Matos's patrol vehicle.  Officer Matos then photographed the firearm, which was laying on the ground next to the passenger door where Finklea fled.  Next to the firearm was the ZTE cellular telephone identified in Attachment A-1.  (Attached hereto as Exhibit 1 is a photograph that depicts where the firearm and ZTE cellular telephone were overserved and recovered by Officer Matos.) The firearm recovered was a Star 9mm pistol that had been reported stolen out of Alabama. Additionally, a glass smoking device was also located

3

on the driver's side floor board.[1]

6.    While officers were circulating the area looking for Finklea, Finklea was observed running in the area of 116 North Tarragona Street. In an effort to keep track of Finklea, a PPD K-9 was deployed and tracked Finklea to the southernmost part of 116 North Tarragona Street. Thereafter, Finklea was taken into custody. Following his apprehension, the LG cellular telephone described in Attachment A-2, two grams of suspected methamphetamine, and two grams of suspected marijuana were recovered from Finklea's pants' pocket.[2] Thereafter, Finklea was arrested for various charges including, fleeing and attempting to elude, possession of a firearm by a convicted felon, dealing in stolen property, resisting an officer without violence, possession of methamphetamine, possession of less than twenty grams of marijuana, and possession of drug paraphernalia. According to records obtained, Finklea has the following felony convictions:

A.    March 23, 2005 – Grand Theft Auto;

B.    March 23, 2005 – Grand Theft Auto;

C.    November 8, 2006 – Grand Theft $300 or more, but less than $5,000;

D.    November 8, 2006 – Grand Theft Auto, and Grand Theft $300 or more, but less than $5,000;

E.    May 9, 2007 – Burglary Unoccupied Conveyance (two counts), Grand Theft Auto (two counts); and Grand Theft $300 or more, but less than $5,000.

F.    January 16, 2008 – Grand Theft Auto; and

---

[1]   Thereafter, the pipe was field tested for methamphetamine with positive results.
[2]   Both substances were field tested with positive results for methamphetamine and marijuana respectively.

G.     December   14,   2016   –   Sale,   Manufacture,   Deliver Methamphetamine.[3]

7.     Subsequent thereto, Finklea and Patroni were transported to PPD for interviews. After waiving her *Miranda* Rights, Patroni agreed to speak with law enforcement. Patroni stated she and Finklea left the Gateway Inn around one in the morning, and thereafter, she fell asleep in the vehicle and did not wake up until they were being stopped by police. Patroni stated they stopped the second time because Finklea crashed the vehicle. Patroni stated Finklea climbed over her to get out of the vehicle and then fled on foot. Patroni admitted that when the officer approached her, she told the officer that Finklea had dropped a firearm. However, Patroni stated she did not see the firearm on Finklea.

8.     After waiving his *Miranda* Rights, Finklea agreed to speak with police. Finklea confirmed that when he saw the officer approaching his vehicle, he drove away. Finklea stated when he crashed the vehicle, he fled the area on foot. Finklea was asked several questions regarding the firearm, but insisted each time that neither his DNA, nor his fingerprints would be found on the firearm. When Finklea was shown two cellular telephones that were recovered, Finklea confirmed the cellular telephones were his. Finklea was then shown a copy of a photograph depicting his cellular telephone beside the firearm, and asked if he could explain how his cellular telephone ended up so close a stolen firearm, but he was unable to provide an explanation.

9.     During the course of your affiant's training and experience, and through

---

[3]     Please note that your affiant was able to obtain a copy of the judgment and sentences for Finklea's felony convictions identified in paragraphs A through F. However, to date, your affiant has not obtained a copy of a judgment for the 2016 conviction identified in paragraph G. This conviction was identified after reviewing the Florida Department of Corrections' Offender Network website.     According to the Florida Department of Corrections' website, Finklea is on probation for this offense, and is scheduled to terminate probation in December 2019.

conversations with other more experienced law enforcement officers, your affiant has learned of various methods used by narcotics traffickers to conceal their assets, income, and activities from the government and other third parties. Based on your affiant's training and experience, and through conversations with other officers and agents, your affiant knows the following:

(a)     Narcotics traffickers often utilize cellular telephones to facilitate communication with co-conspirators and/or store telephone numbers/addresses of associates;

(b)     Narcotics traffickers often utilize multiple cellular telephones in an effort to compartmentalize their narcotics trafficking business. Multiple cellular telephones are often utilized in an effort to maintain anonymity and independent contact between sources of supply and a range of customers;

(c)     Narcotics traffickers maintain records, receipts, notes, ledgers, and other items relating to the transportation, ordering, sale and distribution of controlled substances, which are usually maintained where the traffickers have ready access to them and which are often stored on digital media;

(d)     Narcotics traffickers commonly maintain addresses or telephone numbers in devices which list names, addresses and/or telephone numbers of their associates in the trafficking organization; such records are normally maintained within places/things under their control;

(e)     Narcotics traffickers take or cause to be taken photographs of themselves, their associates, their property, and the illegal narcotics they distribute, and often maintain these photographs within places/things under their control, including on cellular devices;

6

(f)     Narcotics traffickers commonly use cellular telephones in order to communicate with their criminal associates and those telephones are commonly carried with them or kept at locations under their custody and control, such as their residences and vehicles, and contain names, numbers and other information stored in the phones; and

(g)     Narcotics traffickers commonly are involved in money laundering and retain records of their transactions within places/things under their control.  Records of this kind are also often stored on digital media.

Further, your affiant has been involved in investigations, and been made aware of investigations, in which individuals who possessed firearms took photographs of themselves with the firearms and said photographs were recovered from cellular devices.

10.     Based upon the information above, your affiant respectfully submits and believes there is probable cause to believe that violations of Title 18, United States Code, Section 922(g)(1) and Title 21, United States Code, Section 841, and evidence of said offenses more specifically set forth in Attachment B, will be found on the cellular telephones described in Attachments A-1 and A-2.  As a result, your affiant asks this Court to authorize warrants authorizing a search of said cellular telephones.

11.     Your affiant declares under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

Respectfully submitted,

KIMBERLY A. SUHI,
Special Agent, Bureau of Alcohol, Tobacco,
Firearms and Explosives

Subscribed and sworn to before me this **20** day of February, 2018.

CHARLES J. KAHN, JR.
United States Magistrate Judge
Northern District of Florida

8



**VeriPic** VeriPic® Digital Evidence Manager (R) with Authentication

**Media Title**

**Notes**

| | |
|---|---|
| Version | I |
| Case Number | PPD18OFF000795 |
| Photographer | Patrol Squad D |
| Authentication Result | Passed (Security begins at: Camera) |
| Camera Model | Canon PowerShot A495 |
| Camera Clock | 01/24/2018 17:36:41 Central Standard Time |
| Media Import Time (Authentic) | 01/25/2018 08:43:52 PM Central Standard Time (Time of Importing) |
| Media File | IMG_0307.JPG |
| Magnification | 100 % of available space |
| Origin (X Pixels, Y Pixels) | (0 Pixels, 0 Pixels) |
| Printer Note | |
| Resolution (X Pixels, Y Pixels) | (3648 Pixels Wide, 2736 Pixels High) |
| Viewing Parameters | Brightness: 100, Contrast: 100, Color: 100, Red Strength: 100, Green Strength: 100, Blue Strength: 100 |
| Background Removal Filters | Filters are not being used. |
| Serial Number | 202779 |
| Import User | Patrol Squad D |

EXHIBIT 1



**VeriPic®** Digital Evidence Manager (R) with Authentication

**Media Title**

**Notes**

| | |
|---|---|
| Version | 1 |
| Case Number | PPD18OFF000795 |
| Photographer | Patrol Squad D |
| Authentication Result | Passed (Security begins at: Camera) |
| Camera Model | Canon PowerShot A495 |
| Camera Clock | 01/24/2018 17:36:52 Central Standard Time |
| Media Import Time (Authentic) | 01/25/2018 08:43:52 PM Central Standard Time (Time of Importing) |
| Media File | IMG_0308.JPG |
| Magnification | 100 % of available space |
| Origin (X Pixels, Y Pixels) | (0 Pixels, 0 Pixels) |
| Printer Note | |
| Resolution (X Pixels, Y Pixels) | (3648 Pixels Wide, 2736 Pixels High) |
| Viewing Parameters | Brightness: 100, Contrast: 100, Color: 100, Red Strength: 100, Green Strength: 100, Blue Strength: 100 |
| Background Removal Filters | Filters are not being used. |
| Serial Number | 202780 |
| Import User | Patrol Squad D |

EXHIBIT 1